BURNETT v BRUNER

Docket No. 220039. Submitted March 7, 2001, at Detroit. Decided September 7, 2001, at 9:00 A.M. Leave to appeal sought.

R. Celestia Burnett brought an action in the Oakland Circuit Court against Bernadine Bruner, seeking damages for injuries suffered when she slipped and fell while walking across the defendant's snow-covered front yard while on the way to the front door of the defendant's house for a social visit. There was no formal hard-surfaced walkway between the driveway and the front door of the house, necessitating that guests cross the front yard to reach the front door. The plaintiff alleged that she slipped and fell when she stepped on a snow-covered ridge of a tire track that had been left in the front yard. The defendant requested that the jury be instructed that the plaintiff is expected to take the premises of the defendant as the defendant herself uses them and that the plaintiff cannot expect preparations or precautions other than those the defendant would take for herself or her family's safety. The court, Robert L. Templin, J., refused to give the defendant's requested instruction and instead instructed the jury that the defendant is liable for injuries to the plaintiff that are caused by a condition of the defendant's premises if the defendant knew or should have known that the condition involved an unreasonable risk of harm to the plaintiff, the defendant should have expected that the plaintiff would not discover or realize the danger, the defendant failed to exercise reasonable care to make the condition safe or to warn the plaintiff of the condition and the risk involved, and the plaintiff did not know or have reason to know of the condition or risk involved. The jury returned a verdict for the plaintiff. The court denied the defendant's motion for judgment notwithstanding the verdict. The defendant appealed.

The Court of Appeals *held*:

1. The plaintiff, being a social guest of the defendant, was a licensee on the defendant's property at the time of her injury. Although the Supreme Court in *Preston v Sleziak*, 383 Mich 442 (1970), adopted 2 Restatement Torts, 2d, § 342 as the best expression of the duty owed by a landowner to a licensee, and § 342 contains the language that a landowner is liable for a physical harm

caused to a licensee by a condition of the land if the landowner "fails to exercise reasonable care to make the condition safe," the Restatement in a comment to § 330, which discusses the distinction between the duty owed to a licensee and the duty owed to an invitee and was quoted by the *Preston* Court, and in various comments to § 342 indicates that a licensee is expected to take a premises as the landowner uses them and is not entitled to expect the landowner to take special precautions to make the premises safe for the licensee. Accordingly, it would appear that § 342 was not intended to imply that a landowner owes to a licensee a duty to repair or to inspect the property. Rather, the landowner simply owes a duty to warn a licensee of conditions that the landowner knows or has reason to know exist and that the landowner should realize involve an unreasonable risk of harm to the licensee, where the licensee does not know or have reason to know of the condition or the risk involved. Such a reading of the meaning and intent of § 342 is consistent not only with the comments in the Restatement but also with the jury instructions approved by the *Preston* Court.

2. Although the trial court's instruction was modeled after SJI2d 19.06, which repeats the Restatement's language that liability can be found where the landowner has failed to exercise reasonable care to make a condition safe or to warn a licensee of a condition and a risk involved with the condition, the court erred in refusing to give the defendant's requested instruction that the plaintiff was not entitled to expect that special precautions would be taken to prepare the premises for the plaintiff's safety. Because under the instructions given the jury could have based its verdict either on the defendant's failure to perform a duty actually owed by the defendant to the plaintiff—the duty to warn—or on the defendant's failure to perform a duty not owed by the defendant to the plaintiff—the duty to exercise reasonable care to make the condition safe—and because it is impossible to determine with any confidence which of the two options the jury chose, substantial justice requires that the judgment be reversed and the matter be remanded for a new trial at which proper jury instructions are given.

3. Because there was sufficient evidence from which the jury could have found that there existed a dangerous condition of which the defendant was aware and that the plaintiff was not aware of either the condition or the risk involved, the defendant was not entitled to a judgment as a matter of law, and the trial court properly denied the defendant's motion for judgment notwithstanding the verdict.

Reversed and remanded.

NEGLIGENCE — PREMISES LIABILITY — LICENSEES — DUTY OF CARE.

A landowner owes a duty to warn a licensee of conditions that the landowner knows or has reason to know exist and that the landowner should realize involve an unreasonable risk of harm to the licensee, where the licensee does not know or have reason to know of the condition or the risk involved; a landowner owes no duty of inspection or affirmative care to make the premises safe for a licensee.

*Charles E. Kovsky, P.C.* (by *Charles E. Kovsky*), for the plaintiff.

*Rosati Associates, P.C.* (by *A. D. Rosati*), for the defendant.

Before: K. F. KELLY, P.J., and SMOLENSKI and METER, JJ.

SMOLENSKI, J. Defendant appeals as of right from a judgment entered after a jury verdict in this premises liability action. Defendant argues that the circuit court failed to properly instruct the jury regarding the duty of care owed by a landowner to a licensee. Further, defendant argues that the trial court erroneously denied her motion for judgment notwithstanding the verdict because plaintiff failed to prove the essential elements of her premises liability claim. We reverse and remand for a new trial before a properly instructed jury.

I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of plaintiff's slip and fall at defendant's home in December 1993. Plaintiff and her husband traveled from Florida to Michigan to visit their daughter, Martha Gordon. Defendant's son Michael, who had been dating Martha for several years, invited plaintiff and her husband to defendant's

home. Upon arrival at defendant's home, plaintiff followed Michael across the snow-covered lawn toward defendant's front door. Plaintiff stepped on an unseen depression or elevation beneath the snow, causing her to fall and break her hip.

Plaintiff filed a premises liability action against defendant. The circuit court denied defendant's motion for summary disposition, and the case proceeded to a jury trial. After the close of proofs, the jury awarded plaintiff $200,000 in damages, allocating eighty percent comparative fault to defendant and twenty percent comparative fault to plaintiff. The circuit court subsequently denied defendant's motions for a new trial and for judgment notwithstanding the verdict. Defendant appeals as of right.

## II. DUTY OF CARE OWED TO LICENSEES

Defendant first contends that the circuit court failed to correctly determine the duty of care owed by a landowner to a licensee. As our Supreme Court stated in *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 95-96; 485 NW2d 676 (1992):

> The threshold issue of the duty of care in negligence actions must be decided by the trial court as a matter of law. In other words, the court determines the circumstances that must exist in order for a defendant's duty to arise. . . .
> . . . A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. [Citation omitted.]

In premises liability cases, the duty owed by the landowner is determined by the plaintiff's status at the time of injury. In *Stitt v Holland Abundant Life*

*Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000),[1] our Supreme Court explained:

> Historically, Michigan has recognized three common-law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee. Michigan has not abandoned these common-law classifications. Each of these categories corresponds to a different standard of care that is owed to those injured on the owner's premises. Thus, a landowner's duty to a visitor depends on that visitor's status. [Citations omitted.]

In the instant case, the parties agree that plaintiff was a licensee on defendant's property at the time of her injury. The parties also agree that *Preston v Sleziak*, 383 Mich 442; 175 NW2d 759 (1970), overruled in part in *Stitt, supra*, sets forth the duty of care owed by a landowner to a licensee.[2] However, the parties hotly dispute the proper interpretation of *Preston*. Defendant argues that a licensee must accept the premises in the condition maintained by the landowner for his own use. Further, defendant argues that a licensee is not entitled to expect that the premises will be prepared for his reception or that precautions will be taken for his safety. Plaintiff rejects defendant's interpretation, arguing that a landowner owes a duty to his licensees either to remove

---

[1] The *Stitt* Court issued its decision after the parties submitted briefs in the present case.

[2] In *Stitt, supra* at 602-603, the Court partially overruled *Preston*, to the extent that *Preston* adopted the definition of "public invitee" set forth in 2 Restatement Torts, 2d, § 332, p 176. However, the *Stitt* Court did not directly address *Preston's* holding regarding the duties owed by landowners to their licensees. We conclude that this portion of *Preston* remains a binding interpretation of Michigan law. Indeed, the *Stitt* Court expressly approved the *Preston* holding with regard to the duty owed by a landowner to his licensees. *Stitt, supra* at 596.

dangerous conditions from the premises or to provide adequate warnings about those conditions.

In *Preston, supra* at 453, our Supreme Court adopted 2 Restatement Torts, 2d, § 342, p 210, as the best expression of the duty owed by a landowner to his licensees. Section 342 of the Restatement provides:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

On its face, subsection 342(b) appears to support plaintiff's argument that a landowner owes licensees a duty to repair dangerous conditions in preparation for a licensee's visit. However, defendant points to another portion of the *Preston* holding to support her argument that a licensee must accept the premises in the condition maintained by the landowner for his own use. While discussing the distinction between the duty owed to a licensee and the duty owed to an invitee, the *Preston* Court quoted 2 Restatement Torts, 2d, § 330, comment *h*, p 175:

> "The use of the premises is extended to [the licensee] merely as a personal favor to him. The explanation usually given by the courts for the classification of social guests as licensees is that there is a common understanding that *the*

> *guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family."* [*Preston, supra* at 451 (emphasis added).]

This language apparently contradicts the language of subsection 342(b), which subjects a landowner to liability if "he fails to exercise reasonable care to make the condition safe." In order to resolve this apparent conflict, we turn to the commentary that accompanies § 342. First, we note that comment *d*, p 211, provides:

> *Inspection.* A possessor of land owes to a licensee *no duty to prepare a safe place for the licensee's reception or to inspect the land to discover possible or even probable dangers.*
>
> A licensee's privilege to enter is a gift, and the licensee, as the recipient thereof, is entitled to expect nothing more than a disclosure of the conditions which he will meet if he acts upon the license and enters, in so far as those conditions are known to the giver of the privilege.
>
> A member of the possessor's family or his social guest is also entitled at most to knowledge of such dangers as the possessor knows or has reason to know. If the possessor knows of the existence of a condition, but has no reason to know that it is dangerous, then he is under no duty to make the disclosure. [Emphasis added.]

In addition, comment *e*, p 212, provides, in pertinent part:

> The liability of a possessor of land who invites or permits licensees to enter his land is not based upon a duty to maintain it in safe condition. It is based upon his duty to dis-

close to them the risk which they will encounter if they accept his invitation or permission.

Finally, comment *f*, p 212, provides, in pertinent part:

> *Preparations for licensee's safety.* A licensee, in whose visit the possessor has no [economic] interest, *is not entitled to expect that special preparations will be made for his safety* or that the possessor will warn him of conditions which are perceptible by his senses, or the existence of which can be inferred from facts within the licensee's knowledge. The possessor is entitled to expect that the licensee, realizing all this, will be on the alert to discover conditions which involve risk to him. [Emphasis added.]

A fair reading of the above commentary convinces us that the Restatement was neither intended nor designed to imply a duty owed by a landowner to his licensees to repair or to inspect his property. Rather, the landowner simply owes the licensee a duty to warn of unreasonably dangerous conditions, when the licensee neither knows nor has reason to know of the condition and the risk involved. We believe that this interpretation of § 342 comports with the reasoning utilized by our Supreme Court in *Stitt, supra* at 596:

> A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. *A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit.* Typically, social guests are licensees who assume the ordinary risks associated with their visit. [Citations omitted, emphasis added.]

Further, both the *Stitt* and *Preston* Courts approved the following jury instructions read by the trial judge in *Preston:*[3]

"There is no duty on the part of the host to reconstruct or improve the premises for the purpose of making his house more convenient or more safe for those accepting his hospitality, gratuitously extended. The guest assumes the ordinary risks which attach to the premises.

Now, the reason for this rule is that a host merely offers his premises for enjoyment by his guests with the same security that the host and the members of his family who reside with him have in that particular home." [*Preston, supra* at 446-447.]

On the basis of our Supreme Court's decisions in *Stitt* and *Preston*, along with the Restatement commentary, we conclude that a landowner owes his licensees only a duty to warn. A landowner does not owe his licensees any duty to inspect or to repair his premises. With these principles in mind, we turn to the facts of the instant case.

According to the testimony of Martha Gordon, who had visited defendant's residence on numerous occasions, the front yard was very rough, containing rocks, pine trees, and only sparse grass. Defendant conceded that she maintained her front yard in a "natural" or "rustic" condition. Further, defendant explained that no formal, hard-surfaced walkway connected the driveway and the home. Rather, defendant's family and her guests were required to cross

---

[3] In *Stitt, supra* at 603, the Court concluded that the trial court in *Preston* had "properly instructed the jury on the duty owed by a host to his social guests, licensees." In *Preston, supra* at 453-454, the Court likewise concluded that "the trial court's charge to the jury fairly instructed them of the duty which a host owes to his social guest."

the front yard in order to enter the home. According to Ms. Gordon, excavation work performed on defendant's property the previous fall had created tire tracks and ruts in the front yard. In addition, Ms. Gordon testified that defendant and her family often parked vehicles in that area, contributing to the creation of tire tracks and ruts. In December 1993, on the day in question, snow covered defendant's front yard, obscuring any tire tracks or ruts that existed there.[4]

In her second amended complaint, plaintiff alleged that she stepped on an unseen ridge or elevation in defendant's front yard that was hidden beneath the snow, causing her to fall and break her hip.[5] Plaintiff argues that defendant should have taken action to ensure that her front yard was a safe place for her social guests. Specifically, plaintiff argues that defendant should have filled the tire tracks that had formed in her front yard or that defendant should have created a safer pathway from her driveway to her front door. We reject plaintiff's characterization of defen-

---

[4] In her appeal brief, defendant briefly mentions this Court's decision in *Altairi v Alhaj*, 235 Mich App 626; 599 NW2d 537 (1999). In that case, this Court held that "the natural accumulation doctrine does not apply to the licensor-licensee context where the injury occurred on the possessor's private property." *Id.* at 638. Rather, the natural accumulation doctrine insulates only "municipalities, and those private possessors whose land abuts municipal sidewalks, from injuries caused by the natural accumulation of ice and snow on municipal property." *Id.* at 637. In the present case, plaintiff does not argue that the natural accumulation of ice and snow in defendant's front yard caused her injury. Instead, she argues that a ridge or elevation beneath the snow caused her to fall.

[5] Plaintiff's allegations about her fall changed over time. In her original complaint, plaintiff alleged that she slipped and fell on ice and snow in defendant's driveway. In her first amended complaint, plaintiff alleged that she stepped onto a hidden ridge or elevation of the driveway, causing her to slip and fall. In her second amended complaint, plaintiff alleged that she stepped onto a hidden ridge or elevation in the pathway between the driveway and the house.

dant's legal duties to her licensees. Defendant was not required to repair the condition of her premises in advance of plaintiff's visit. Defendant was not required to fill any tire tracks, ruts, or depressions in her front yard. She was not required to remove rocks or tree roots in order to create a smooth walking surface. She was not required to install a hard-surfaced walkway between her driveway and front door. Defendant was simply required to *warn* her licensees of dangerous conditions that the licensees would not be likely to discover while visiting defendant's property.

### III. JURY INSTRUCTIONS

Defendant contends that the circuit court failed to properly instruct the jury regarding the duty of care owed by a property owner to a licensee. We exercise review de novo over claims of instructional error. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). In doing so, we examine the jury instructions as a whole to determine whether the trial court committed error requiring reversal. *Id.* We will reverse for instructional error only where failure to do so would be inconsistent with substantial justice. *Id.*; MCR 2.613(A). When the standard jury instructions do not adequately cover an area of law, the trial court is obligated to read supplemental instructions requested by one of the parties, as long as those instructions properly inform the jury on the applicable law. *Sherrard v Stevens*, 176 Mich App 650, 655; 440 NW2d 2 (1988). Jury instructions "should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them." *Case, supra* at 6.

Defendant requested that the circuit court read the following special jury instruction:

> Plaintiff is expected to take the premises as defendant herself uses them and cannot expect and is not entitled to expect that they will be prepared for her reception, or that precautions will be taken for her safety, in any manner in which the defendant does not prepare or take precautions for her own safety or that of the members of her family.

The circuit court refused to read defendant's requested special instruction. Instead, the circuit court read the following instruction, modeled after SJI2d 19.06:

> Now, a possessor of premises is libel [sic] for physical harm caused [to] plaintiff Celest Burnett by a condition on the premises if and only if the possessor knew or should have know[n] that the condition . . . involved . . . an unreasonable risk [of] harm to the plaintiff Celest Burnett and should have expected that she would not discover or realize the danger and possessor failed to exercise reasonable care to make the condition safe, or to warn the plaintiff Mrs. Burnett of the condition and the risk involved and the plaintiff's [sic] Celest Burnett did not know or have reason to know that [sic] of the condition and the risk involved.

The instruction given by the trial court adequately conveyed to the jury that defendant owed plaintiff a duty to warn of dangerous conditions. However, it did not inform the jury that defendant owed plaintiff neither a duty of inspection nor a duty of affirmative care to make her premises safe for plaintiff's visit. Therefore, we conclude that the circuit court erred in refusing to read defendant's requested special instruction. As instructed, the jury could have based its verdict on one of two conclusions: (1) defendant "failed to exercise reasonable care to make the condition

safe," or (2) defendant failed to warn plaintiff of an unreasonable risk of harm that plaintiff should not be expected to discover or realize. Because it is impossible to determine with any confidence which of these two options the jury chose, and because a verdict for plaintiff based on the first option would be contrary to law, substantial justice requires reversal in this case. *Case, supra* at 6.

### IV. KNOWLEDGE OF THE ALLEGEDLY DANGEROUS CONDITION

Defendant next contends that the circuit court erroneously denied her motion for judgment notwithstanding the verdict. We review the trial evidence de novo to determine if the circuit court clearly erred in denying the defendant's motion for judgment notwithstanding the verdict. *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 284; 602 NW2d 854 (1999). We must view all legitimate inferences from the evidence in the light most favorable to plaintiff. *Id.* An entry of judgment notwithstanding the verdict is appropriate only if the evidence so viewed fails to establish a claim as a matter of law. *Id.*

Defendant argues that she neither knew nor should have known about the condition of her front yard. Further, defendant argues that any tire tracks or ruts that existed in her front yard did not present an unreasonable risk of harm that a licensee would not discover or realize. Therefore, defendant contends that the trial court should have granted her motion for judgment notwithstanding the verdict. We disagree. Martha Gordon testified that excavation work performed in defendant's front yard during defendant's occupancy of the premises had left the ground in "really rough shape" and that numerous tire tracks

and ruts existed in the yard, including at least one that was four to five inches in depth. All witnesses agreed that snow covered the front yard on the date of plaintiff's fall. Therefore, any rough areas, tire tracks or ruts that did exist would have been obscured from plaintiff's view.[6] Viewing this evidence in the light most favorable to plaintiff, we conclude that a reasonable jury could have determined: (1) defendant knew or should have known about an unreasonably dangerous condition existing in her front yard, (2) defendant knew or should have known that, given the snowfall common during a Michigan winter, licensees visiting her property would not discover or realize the hidden danger, and (3) plaintiff neither knew nor should have known about the dangerous condition or the risk involved. We conclude that the trial court properly denied defendant's motion for judgment notwithstanding the verdict.

### V. CONCLUSION

In summary, we hold that a landowner owes his licensee a duty only to warn of hidden dangers the landowner knows or has reason to know of, and only if the licensee does not know or have reason to know of the dangers involved. The landowner does not owe the licensee a duty to inspect or to repair in order to make the premises safe for the licensee's visit. We

---

[6] In this case, it is clear that plaintiff lacked actual knowledge of any trip and fall hazard hidden beneath the snow in defendant's front yard. Plaintiff first visited defendant's property one week before her accident. At that time, there was no snow on the ground and the tire tracks or ruts of which plaintiff complains could have been visible. However, plaintiff did not leave her vehicle. Therefore, we can only assume that plaintiff did not see the condition of the property during her previous visit to defendant's home.

conclude that the instructions read to the jury in the present case failed to accurately convey defendant's legal duties to plaintiff and that substantial justice requires reversal in this case. Reversed and remanded for a new trial before a properly instructed jury. We do not retain jurisdiction.